UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JORDAN RINDGEN,

              Plaintiff,

   - against –

BROOME COUNTY; BROOME COUNTY
DISTRICT ATTORNEY'S OFFICE; FORMER
BROOME COUNTY DISTRICT ATTORNEY
MICHAEL A. KORCHAK; FORMER CHIEF
ASSISTANT DISTRICT ATTORNEY MARK
LOUGHRAN; ASSISTANT DISTRICT ATTORNEY
ALYSSA CONGDON; ASSISTANT DISTRICT
ATTORNEY AMANDA CRONIN; DISTRICT
ATTORNEY INVESTIGATOR JEFF J. WAGNER;
UNIDENTIFIED JANE/JOHN DOE #1-10 BROOME
COUNTY EMPLOYEES; CITY OF BINGHAMTON;
POLICE CHIEF JOSEPH T. ZIKUSKI; CAPTAIN
CORY MINOR; DETECTIVE AMANDA MILLER;
UNIDENTIFIED JANE/JOHN DOE #1-10 CITY OF
BINGHAMTON EMPLOYEES; HAILEY
DEMKOVICH; and SAMANTHA HERCEG, all
named individuals are sued in their individual
capacities;

              Defendants.

               .

Case No. 3:24-cv-1325 (AJB/ML)

**DEFENDANT COUNTY OF BROOME'S MEMORANDUM
OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

Respectfully submitted,

**THE WLADIS LAW FIRM, P.C.**
Christopher J. Baiamonte, Esq. (Bar Roll #702528)
Timothy J. Lambrecht (Bar Roll #510390)
*Attorneys for Defendant, The County of Broome*
P.O. Box 245
Syracuse, NY 13214
Telephone:  (315) 445-1700
E-mail:  cbaiamonte@wladislawfirm.com
             tlambrecht@wladislawfirm.com

# Table of Contents

STATEMENT OF FACTS .......................................................................................... 1

ARGUMENT .......................................................................................................... 2

I.    STANDARD OF REVIEW ON A MOTION FOR JUDGMENT ON THE
PLEADINGS  UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(C) ........................ 2

II.   THE BROOME COUNTY DISTRICT ATTORNEY'S OFFICE IS NOT AN ENTITY
CAPABLE OF BEING SUED ................................................................................. 3

III.  THE COMPLAINT FAILS TO MEET *MONELL* PLEADING STANDARDS ON
ANY OF ITS FEDERAL CAUSES OF ACTION ...................................................... 4

IV.   THE COUNTY SHOULD BE GRANTED JUDGMENT ON PLAINTIFF'S THIRD
CAUSE OF ACTION FOR FAILURE TO INTERVENE .......................................... 6

V.    THE COUNTY SHOULD BE GRANTED JUDGMENT ON PLAINTIFF'S FOURTH
CAUSE OF ACTION FOR § 1983 CONSPIRACY .................................................. 8

VI.   THE COUNTY SHOULD BE GRANTED JUDGMENT ON PLAINTIFF'S SIXTH
CAUSE OF ACTION FOR UNCONSTITUTIONAL CUSTOM OR POLICY AND
FAILURE TO SUPERVISE AND TRAIN ............................................................ 11

VII.  ALL PLAINTIFF'S STATE LAW CLAIMS ARE BARRED BY THE
GOVERNMENT IMMUNITY DOCTRINE AND THE SPECIAL DUTY RULE ............. 13

VIII. THE COUNTY SHOULD BE GRANTED JUDGMENT ON PLAINTIFF'S
SEVENTH CAUSE OF ACTION FOR MALICIOUS PROSECUTION AND FALSE
ARREST .......................................................................................................... 14
    A.  MALICIOUS PROSECUTION .................................................................. 14
    B.  FALSE ARREST .................................................................................... 16

IX.   THE COUNTY IS ENTITLED TO JUDGMENT ON PLAINTIFF'S EIGHTH CAUSE
OF ACTION FOR ABUSE OF PROCESS ........................................................... 18

X.    THE COUNTY IS ENTITLED TO JUDGMENT ON PLAINTIFF'S NINTH CAUSE
OF ACTION FOR INTENTIONAL, RECKLESS, OR NEGLIGENT INFLICTION OF
EMOTIONAL DISTRESS ................................................................................. 19
    A.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS .............................. 19
    B.  NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS .................................. 21

XI.   THE COUNTY IS ENTITLED TO JUDGMENT ON PLAINTIFF'S TENTH CAUSE
OF ACTION FOR NEGLIGENT HIRING, TRAINING, AND RETENTION .................. 22

i

XII.  THE COUNTY IS ENTITLED TO JUDGMENT IN ITS FAVOR ON PLAINTIFF'S ELEVENTH CAUSE OF ACTION UNDER ARTICLE I, §§ 6 AND 12 OF THE NEW YORK STATE CONSTITUTION ........................................................................................ 23

XIII. THE COUNTY SHOULD BE GRANTED JUDGMENT ON PLAINTIFF'S TWELFTH CAUSE OF ACTION CLAIMING RESPONDEAT SUPERIOR ..................... 24

CONCLUSION........................................................................................................................ 25

## TABLE OF AUTHORITIES

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ................................................................. 3

*Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) ................................ 9

*Baez v. Hennessy,* 853 F.2d 73, 76 (2d Cir. 1988) ........................................................ 5

*Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) ........................................ 3

*Baram v. Doe*, No. 23-cv-1758 (ER), 2024 WL 232319, at *10 (S.D.N.Y. January 22, 2024) ... 25

*Barnville v. Mimosa Cafe*, No. 1:14–CV–518–GHW, 2014 WL 3582878, at *2 (S.D.N.Y. July 10, 2014) ..................................................................................................... 23

*Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410–11 (1997) .................................... 12

*Bd. of Educ. of Farmingdale Union Free School Dist. v. Farmingdale Classroom Teachers Ass'n*, 38 N.Y.2d 397, 404 (1975) .............................................................. 18

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007) ................................................ 3

*Berie v. Stevenson*, No. 5:18-cv-00119 (BKS/TWD), 2019 WL 1017317 at *5 (N.D.N.Y. March 4, 2019) ........................................................................................... 24

*Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015) .............................. 17

*Brady v. Maryland*, 373 U.S. 83 (1963) ..................................................................... 12

*Bryant v. Ciminelli*, 267 F. Supp. 3d 467, 479 (W.D.N.Y. 2017) ............................... 14

*Buari v. City of New York*, 530 F.Supp.3d 356, 395 (S.D.N.Y. 2021) ......................... 9

*Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002) ....................... 8

*City of Canton v. Harris*, 489 U.S. 378, 388 (1989) .................................................. 4

*City of Okla. v. Tuttle*, 471 U.S. 808, 824 n.8 (1985) ................................................. 5

*City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988) ......................................... 5

*Connick v. Thompson*, 563 U.S. 51, 61 (2011) ......................................................... 11

*Curiano v. Suozzi*, 63 N.Y.2d 113, 116 (1984) ........................................................ 18

*Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) ......................................... 15

*D.S. v. City of New York*, 736 F.App'x 284, 287 (2d Cir. 2018) ................................ 4

*De'Bey v. City of N.Y.*, No. 20 Civ. 1034 (PGG) (SLC), 2021 WL 8013765, at *16 (S.D.N.Y. Oct. 26, 2021) ................................................................................... 23

*Doe v. City of New York*, No. 09 Civ. 9895(SAS), 2013 WL 796014, at *3 (S.D.N.Y. March 4, 2013) ............................................................................................. 25

*Drawbridge v. Schenectady County Dept. of Social Services*, No. 23-1214, 2024 WL 1152524, at * 2 (2d Cir. March 18, 2024) ................................................................................ 12

*Dunlop v. City of New York*, No. 06 Civ. 0433(RJS), 2008 WL 1970002, at *9 (S.D.N.Y. May 6, 2008) ................................................................................................................ 10

*Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) .................................... 22

*Figueroa v. Mazza*, 825 F.3d 89 (2d Cir. 2015) ............................................................. 6

*Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021) ............................... 21

*Gabriel v. City of New York*, 89 A.D.3d 982, 983 (2d Dept. 2011) ............................... 13

*Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ...................................................... 9

*Giglio v. United States*, 405 U.S. 150 (1972) ................................................................ 12

*Guadagni v. N.Y.C. Trans. Auth.*, No. 08–CV–3163 (CPS) (SMG), 2009 WL 1910953, at *4 (E.D.N.Y. June 30, 2009) ................................................................................. 17

*Haddock v. City of New York*, 75 N.Y.2d 478, 484 (1990) ............................................ 20

*Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993) ..................................................... 20

*In re Roman Cath. Diocese of Rockville Ctr., New York*, 651 B.R. 146, 170 (Bankr. S.D.N.Y. 2023) ................................................................................... 23

*Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006) ...................................................... 15

*James v. Flynn,* 132 A.D. 3d 1214, 1216 (3d Dept. 2015) ............................................ 19

*Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) ....................... 7

*Johnson v. Rowley,* 569 F.3d 40, 44 (2d Cir. 2009) ....................................................... 3

*Kee v. City of New York*, 12 F.4th 150, 161–62 (2d Cir. 2021) .................................... 15

*Koulina v. City of New York*, 06-cv-11356 (SHS) 2009 WL 210727, at *5 (S.D.N.Y. Jan. 29, 2009) .............................................................................................................. 16

*Lancellotti v. Howard,* 155 A.D.2d 588, 589 (2d Dept. 1989) ..................................... 21

*Lauer v. City of New York*, 240 A.D. 543 (2d Dep't 1997) ........................................... 20

*Lauer v. City of New York*, 95 N.Y.2d 95, 99–100 (2000) ........................................... 13

*Loria v. Gorman*, 306 F.3d 1271, 1289 (2d Cir. 2002) ................................................. 17

*Maldovan v. County of Erie*, 39 N.Y.3d 166, 171 (2022) .............................................. 14

*McGown v. City of New York*, No. 09-CV-8646, 2010 WL 3911458, at *5 (S.D.N.Y. Sept., 2010) ...................................................................................... 20

*McLean v. City of New York*, 12 N.Y.3d 194, 199 (2009) ............................................. 14

*Melendez v. City of New York*, 171 A.D.3d 566, 566 (1st Dept 2019) .......................................... 20

*Monell v. Dept. of Soc. Serv. of the City of N. Y.,* 436 U.S. 658, 694 (1978) ....................... *passim*

*Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996) ......................................................... 21

*Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983) .................................................. 20

*New York State Properties, Inc. v. Clark*, 183 A.D.2d 1003, 1005 (3d Dept. 1992) ................... 18

*Newton v. City of New York*, 566 F. Supp. 2d 256, 278 (S.D.N.Y. 2008) .................................... 11

No. 20 Civ. 1034 2022 (PGG) (SLC), WL 909790 (S.D.N.Y. March 29, 2022) ........................ 23

*O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988) ............................................................... 7

*Oneida Indian Nation v. Phillips,* 397 F. Supp. 3d 223, 229 (N.D.N.Y. 2019) ............................. 2

*Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) .................... 3

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84 (1986) ........................................................ 4

*People v. Lancaster*, 69 N.Y.2d 20, 25–26 (1986) ....................................................................... 16

*Pierre v. The City of New York*, 860 Fed. Appx 14, 15 (2d Cir. 2021) ........................................... 7

*Pinter v. City of New York*, No. 09 Civ. 7841(SAS), 2013 WL 5597545 at * 15 (S.D.N.Y. Oct.
10, 2013) ....................................................................................................................................... 18

*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) .............................................. 15

*Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) .............................................. 12

*Rodriguez v. City of New York*, 623 F. Supp. 3d 225, 260 (S.D.N.Y. 2022) ................................ 24

*Ross v. Louise Wise Servs., Inc.*, 28 A.D.3d 272 (1st Dept. 2006) ................................................ 20

*Savino v. City of N.Y.*, 331 F.3d 63, 73 (2d Cir. 2003) ................................................................. 15

*Schwab v. Smalls*, 435 Fed. App'x, 37, 40 (2d Cir. 2011) .............................................................. 5

*Simons v. New York*, 472 F. Supp. 2d 253, 265–66 (N.D.N.Y. 2007) .......................................... 18

*Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) .................................................... 15

*Sotak v. Bertoni*, 501 F. Supp. 3d 59, 84 (N.D.N.Y. 2020) ........................................................... 7

*Spence v. City of N.Y.*, No. 1:20-cv-10090 (LTS), WL 4537946,
at *3 (S.D.N.Y. Sept. 28, 2022 ) ................................................................................................ 25

*Strong v. City of Syracuse*, No. 5:16-CV-1054 (NAM/ATB), 2020 WL 137250, at *3 (N.D.N.Y.
Jan. 13, 2020) ................................................................................................................................ 5

*Talarico v. Port Auth. of N.Y. & N.J.*, 367 F. Supp. 3d 161, 171 (S.D.N.Y. 2019) ..................... 24

*Talavera v. Arbit*, 18 A.D.3d 738 (2d Dept. 2005) ...................................................................... 23

*Valdez v. City of New York*, 18 N.Y.3d 69, 76–77 (2011) ............................................................ 13

*Warren v. Fischl*, 33 F.Supp. 2d 171, 177 (E.D.N.Y. 1999) ........................................................ 9

*Werner v. Selene Fin., LLC*, No. 17-CV-06514, 2019 WL 1316465, at *11 (S.D.N.Y. March 22, 2019) ............................................................................................................................................ 21

*Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) ...................................................................... 17

*Williams v. City of Syracuse*, No. 5:19-cv-995 (GLS/ATB) 2020 WL 3574643, at *2 (N.D.N.Y. July 1, 2020) ................................................................................................................................... 8

*Wilson v. Cnty. of Onondaga*, No. 5:20-CV-1489, (DNH/TWD), 2022 WL 3141764 (N.D.N.Y. Apr. 21, 2022) ................................................................................................................................ 7

*Wright v. Orleans County*, No. 14–CV–00622A (F), 2015 WL 5316410 at *13 (W.D.N.Y. Sept. 10, 2015) .................................................................................................................................... 8

*Wyllie v. District Atty. of County of Kings*, 2 A.D.3d 714, 720 (2d Dept. 2003) ......................... 13

*Yang Feng Zhao v. City of New York*, 656 F. Supp. 2d 375, 405 (S.D.N.Y. 2009) ..................... 24

**Statutes**

42 U.S.C. § 1983 ....................................................................................................................... 11, 24

CPLR 215(3) ................................................................................................................................. 20

N.Y. Gen. Mun. Law § 2 ................................................................................................................. 3

**Rules**

Fed. R. Civ. P. 12(c) ....................................................................................................................... 2

Fed. R. Civ. P. 17(b) ....................................................................................................................... 3

Fed. R. Civ. P. 8(a)(2) ..................................................................................................................... 3

## PRELIMINARY STATEMENT

This action is the third of three similar actions brought in this District against Defendant Broome County (the "County"), the City of Binghamton and various individual County and City defendants and two private individuals stemming from the same incident. *See generally Kweller v. Broome County, et al.* (3:24-cv-01328) ("*Kweller I*") and *Kweller v. Broome County*, *et al.* (3:25-cv-00343-AJB-ML) ("*Kweller II*"). The County previously moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) in *Kweller I* and for similar reasons it moves to dismiss the plaintiffs' complaint under Rule 12(b)(6) here. As explained below, plaintiffs do not state cognizable legal claims against the County. For the reasons set forth below, the County should be granted judgment on all causes of action in the Complaint.

## STATEMENT OF FACTS

Plaintiff filed this action in October 2024, asserting claims against the County of Broome, the City of Binghamton, various individual prosecutors and law enforcement officers, and private individuals. The allegations include false arrest, malicious prosecution, and failure to intervene, among others. The complaint spans a wide array of grievances, but lacks specific factual allegations tying the County itself to the alleged misconduct.

Plaintiff Jordan Rindgen, alleges that he was falsely accused of rape by Defendants Hailey Demkovich and Samantha Herceg following events that occurred in Binghamton on November 26 and early November 27, 2021. The events unfolded primarily at Plaintiff's places of business, including the Colonial, Stone Fox, and Dos Rios, as well as an office on Washington Street. The accusations culminated in criminal charges, arrest, and prosecution. Plaintiff's claims against the County rest on allegations of constitutional violations during his criminal investigation and prosecution. Plaintiff alleges that law enforcement did not thoroughly investigate the matter, take steps to preserve or review electronic communications belonging to Defendants Demkovich and

Herceg, and that exculpatory evidence—such as text messages between Defendants and others—was disregarded or destroyed. In October, 2023, Plaintiff was acquitted of all charges following a jury trial. Compl. ¶ 185. Nonetheless, Plaintiff claims that the accusations caused irreparable harm to his reputation and business interests. He asserts that the resulting media attention and community backlash led to the closure of his establishments and to "restrictions on all forms of personal freedom and physical liberty," among other damages.

The investigation and prosecution were conducted by the Binghamton Police Department and Broome County District Attorney's Office ("BCDA"). Plaintiff names several individual prosecutors and investigators as defendants, alleging that they failed to adequately review evidence or pursue leads that could have exonerated him. Plaintiff highlights certain communications among the individual defendants—such as text messages—that he believes indicate a deliberate effort to manipulate evidence or obscure the truth. *See* Compl. ¶ 73. However, these allegations primarily focus on individual actions, with limited reference to broader policies or directives involving the County. The Complaint does not specify actions taken by the County as a municipality, outline any direct involvement by the County itself in the events of the evening or the subsequent investigation. Nor does it articulate any policy or custom maintained by the County that directly contributed to any violation of Plaintiff's constitutional or other rights.

## ARGUMENT

I.    **STANDARD OF REVIEW ON A MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(c)**

Rule 12(c) permits the entry of judgment as a matter of law on the basis of the pleadings alone. *See* Fed. R. Civ. P. 12(c); *Oneida Indian Nation v. Phillips,* 397 F. Supp. 3d 223, 229 (N.D.N.Y. 2019). "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary*

*Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir. 2001). "In both postures, the district court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *Id.* "To survive a Rule 12(c) motion, [the] 'complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.' " *Johnson v. Rowley,* 569 F.3d 40, 44 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. Legal conclusions, however, are not afforded the same presumption of truthfulness. *Id.* The plausibility standard is not a probability requirement; the pleading must show, not merely allege, that the pleader is entitled to relief. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007); Fed. R. Civ. P. 8(a)(2). In other words, to survive dismissal the allegations in the complaint must nudge the claim "across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570.

## II.    THE BROOME COUNTY DISTRICT ATTORNEY'S OFFICE IS NOT AN ENTITY CAPABLE OF BEING SUED

Federal courts apply state law to determine whether an entity has capacity to be sued. *See* Fed. R. Civ. P. 17(b). "Under New York law, a county is a municipal corporation capable of bringing suit and being sued." *Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (*citing* N.Y. Gen. Mun. Law § 2). However, subdivisions or departments of a county, including BCDA, lack the independent legal capacity to be sued. This principle has been consistently upheld by federal and state courts alike. *Id.* ("[s]ince the sheriff's department is merely an administrative arm of the County … the claims asserted against the Warren County Sheriff's Department are dismissed as redundant.") The Complaint states that BCDA "is a department or agency of defendant Broome County responsible for the appointment, training, supervision, promotion and discipline of district attorneys, including the individually named defendants herein." Compl. ¶ 19. Because BCDA lacks the legal capacity to be

sued, the County should be granted judgment on those claims as a matter of law. Plaintiff's allegations, to the extent they seek to hold BCDA liable, should properly be construed as claims against the County.

## III.    THE COMPLAINT FAILS TO MEET *MONELL* PLEADING STANDARDS ON ANY OF ITS FEDERAL CAUSES OF ACTION

In *Monell v. Dept. of Soc. Serv. of the City of N. Y.*, the Supreme Court explicitly rejected the assertion that a municipality can be vicariously liable "under § 1983 for an injury inflicted solely by its employees or agents." 436 U.S. 658, 694 (1978). Under *Monell*, municipal liability can only be imposed if the plaintiff demonstrates a constitutional injury resulting from the "execution of a government's policy or custom." 436 U.S. at 694. The policy or custom must be "the moving force of the constitutional violation," not merely a contributing factor. *Id*.

To allege a plausible municipal policy or custom, a plaintiff must offer facts showing any of the following: (1) a formal policy, officially promulgated by the municipality, *id*. at 690; (2) an action taken by the official responsible for establishing policy with respect to a particular issue, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84 (1986); (3) unlawful practices by subordinate officials so permanent and widespread as to practically have the force of law, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127–30 (1985) (plurality opinion); or (4) a failure to train, supervise, or discipline that amounts to "deliberate indifference" to the rights of those with whom the municipality's employees interact. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

There also must be a "'direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *D.S. v. City of New York*, 736 F.App'x 284, 287 (2d Cir. 2018) (*quoting City of Canton*, 489 U.S. at 385). That a policy or custom *might* lead to prosecutorial misconduct "is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a constitutional violation. There must at least be an affirmative link between, for example, the training inadequacies alleged, and the particular constitutional violation

at issue." *City of Okla. v. Tuttle*, 471 U.S. 808, 824 n.8 (1985). This standard cannot be met with conclusory or boilerplate allegations of a municipal custom or policy that just happen to appear in a pleading adjacent to a purported constitutional violation. *Strong v. City of Syracuse*, No. 5:16-CV-1054 (NAM/ATB), 2020 WL 137250, at *3 (N.D.N.Y. Jan. 13, 2020).

To the extent that Plaintiff would make a blanket assertion that any of the County affiliated attorneys individually named in the Complaint are "policymakers," Compl. at ¶¶ 23–24, and suggest that all actions taken by any County policymaker are inherently a "policy or custom" for *Monell* purposes, this argument is mistaken. The Second Circuit addressed this issue in *Baez v. Hennessy*, where it determined that in New York, a county district attorney's "prosecutorial acts may not 'fairly be said to represent official policy' of the County." 853 F.2d 73, 76 (2d Cir. 1988); *see also Schwab v. Smalls*, 435 Fed. App'x, 37, 40 (2d Cir. 2011) (affirming dismissal of municipal liability claim where plaintiff offered only a "vague assertion" that a particular defendant was a final policymaker with respect to the conduct at issue).

The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion; the official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable. *Id.* at 482; *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988) ("Simply going along with discretionary decisions made by one's subordinates, however, is not a delegation to them of the authority to make policy.") Thus, Plaintiff has not sufficiently alleged that any of the individual County attorney defendants are policymakers with respect to the County in the context of a *Monell* claim.

In sum, Plaintiff's allegations fail to meet the stringent pleading requirements established under *Monell*. While Plaintiff asserts that the County's policies, customs, or practices caused the

alleged constitutional violations, the complaint lacks specific, non-conclusory facts identifying such policy or custom, let alone demonstrating how it served as the moving force behind the purported harm. Without a direct causal link or affirmative evidence connecting a municipal action to the alleged constitutional injury, Plaintiff's *Monell* claims cannot withstand scrutiny. Thus, the County should be granted judgment on all federal claims premised on municipal liability.

## IV.    THE COUNTY SHOULD BE GRANTED JUDGMENT ON PLAINTIFF'S THIRD CAUSE OF ACTION FOR FAILURE TO INTERVENE

Plaintiffs' third cause of action theorizes that the County is liable under § 1983 for "failure to intervene" to prevent various alleged constitutional violations regarding his prosecution. Plaintiff alleges several individual defendants "had opportunities to intervene on behalf of Mr. Rindgen to prevent his malicious prosecution and deprivation of liberty without due process of law, but with deliberate indifference, declined to do so." Compl. at ¶ 212. As just articulated, Plaintiffs has not met the *Monell* pleading requirements to state a claim of municipal liability under § 1983. Beyond that, Plaintiff has not plead requisite elements of a claim for failure to intervene.

Failure to intervene claims under § 1983 often involve situations where plaintiffs are the victim of excessive force in violation of their Eighth Amendment rights and police or corrections officers fail to intercede to stop the harm. *See*, *e.g.*, *Figueroa v. Mazza*, 825 F.3d 89 (2d Cir. 2015) (claim brought against police officers for failing to stop unidentified colleague from unlawfully assaulting plaintiff in police car). Generally, to succeed on a § 1983 claim for failure to intervene, a plaintiff must prove that: (1) a violation of his constitutional rights was ongoing or about to occur; (2) the defendant knew this at the time; (3) the defendant had a reasonable opportunity to intervene to prevent harm to the plaintiff; and (4) the defendant failed to take reasonable steps to intervene. *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (*citing O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988)). Plaintiff fails to state a claim under this theory

because there is no underlying constitutional violation. *See Pierre v. The City of New York*, 860 Fed. Appx 14, 15 (2d Cir. 2021). In addition, Plaintiff does not allege that the County had any reasonable opportunity to intervene—whatever a County intervention might even look like—or what reasonable steps it could have taken to intervene.

Plaintiff broadly alleges that several individual defendants failed to intervene to prevent constitutional violations related to Rindgen's prosecution, but they do not allege facts showing that the County had a realistic opportunity to intervene. They fail to allege or articulate how the County, as a municipal entity, was positioned to prevent or remedy those violations in real time, such as how the defendant police officers in *Figueroa* could have intervened to stop that the assault on that plaintiff. Plaintiff does not identify any County officials who were contemporaneously aware of ongoing violations or had the capacity to take corrective action at critical moments. Also they do not identify the *Monell* prerequisite of a County policy or custom that led to the supposed failure to intervene. Instead, Plaintiff's allegations regarding the County's role are bare and speculative and make no allegation that the County was involved in or aware of the specific events that allegedly caused harm. *See generally* Compl. at ¶¶ 108–146. Without concrete allegations linking the County to a missed opportunity to intervene, Plaintiff's failure to intervene claim is unsupportable. *See Sotak v. Bertoni*, 501 F. Supp. 3d 59, 84 (N.D.N.Y. 2020); *see also Wilson v. Cnty. of Onondaga*, No. 5:20-CV-1489, (DNH/TWD), 2022 WL 3141764 (N.D.N.Y. Apr. 21, 2022), *report & recommendation adopted*, No. 5:20-CV-1489, 2022 WL 2965584 (N.D.N.Y. July 27, 2022) (§ 1983 municipal liability claim insufficient to satisfy *Monell* where it did not include any supporting, non-conclusory factual allegations showing how the City's actions were taken pursuant to any policy or custom).

While Plaintiff makes several perplexing and conclusory allegations that some defendants "fabricated" evidence, the Complaint offers no corroborating factual detail explaining how or what evidence was fabricated (Compl. ¶¶ 213, 217, 219(c)). The Complaint's allegations on this point are simply "boilerplate." *See Williams v. City of Syracuse*, No. 5:19-cv-995 (GLS/ATB) 2020 WL 3574643, at *2 (N.D.N.Y. July 1, 2020) (dismissing the plaintiffs' fabrication of evidence claim because it contained only "boilerplate allegations" and "provide[d] no factual context to support a fair trial claim"); *Wright v. Orleans County*, No. 14–CV–00622A (F), 2015 WL 5316410 at *13 (W.D.N.Y. Sept. 10, 2015), *report and recommendation adopted*, No. 14–CV–00622A, 2015 WL 13660397 (W.D.N.Y. Oct. 27, 2015) ("failure to specify what constituted the allegedly falsified information is fatal to Plaintiff's fair trial claim.")

In sum, the Complaint alleges no plausible facts suggesting that the County as a municipal entity had knowledge of ongoing constitutional violations, a realistic opportunity to intervene, or the means to take corrective action, nor does it allege any municipal policy that would support *Monell* liability. The allegations are conclusory and unsupported, and therefore legally insufficient.

## V.    THE COUNTY SHOULD BE GRANTED JUDGMENT ON PLAINTIFF'S FOURTH CAUSE OF ACTION FOR § 1983 CONSPIRACY

Plaintiff's fourth cause of action claims the County participated in a § 1983 civil rights conspiracy against Plaintiff. Any viable such claim must allege: (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. *See Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002). To make out such a claim, the Complaint must "provide some details of time and place and the alleged effects of the conspiracy." *Warren v. Fischl*, 33 F.Supp. 2d 171, 177 (E.D.N.Y. 1999) (quotations and citations omitted). "It is well settled that claims of conspiracy containing only conclusory, vague, or general allegations of conspiracy to deprive a person of

constitutional rights cannot withstand a motion to dismiss." *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (quotations and citations omitted). The Court has "no obligation to entertain pure speculation and conjecture." *Id.* at 368.  Plaintiff does not allege that any of the defendants "intended to act together for their shared mutual benefit within the scope of the conspiracy." *See Buari v. City of New York*, 530 F.Supp.3d 356, 395 (S.D.N.Y. 2021) ("bare assertion of conspiracy" insufficient to support § 1983 conspiracy claim in absence of specific alleged facts).

While a feature of many of Plaintiff's causes of action, the claim that the County took part in a civil rights conspiracy to deprive him of his civil rights in particular suffers from impermissible group pleading, in violation of Rule 8. "Although [Rule] 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order) (quotations omitted). Plaintiff cannot satisfy this minimal standard "[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct." *Id*.

The allegations concerning the retrieval and disclosure of cell phone data from defendants Herzog and Demkovich undermine his claim of a conspiracy involving the County. Plaintiff's allegations are that efforts were made to retrieve the data, but were frustrated by Herzog's and Demkovich's refusals to cooperate and, allegedly, by defendant Wagner's failure to comply with instructions to collect evidence. *See* Compl. at ¶¶ 114, 122. These assertions directly contradict their claim that the County agreed with any party to suppress evidence. To the contrary, Plaintiff alleges active, albeit deficient, attempts to obtain and preserve it.

As alleged, Plaintiff and his attorney raised the issue of potentially exculpatory text messages with the criminal court on multiple occasions. However, those courts—acting

independently and not at the direction of the County—declined to compel the production of the messages, citing evidentiary and procedural limitations. *Id.* ¶¶ 117, 125, 141. These rulings, made by neutral judges during the course of Plaintiff's prosecution, interrupt any causal chain between the County and the alleged failure to obtain or preserve those communications. Moreover, Plaintiff does not allege that any County policy or decision directly prevented him from accessing the messages. In fact, the Complaint repeatedly notes County employees' efforts to obtain Demkovich's and Herceg's cell phone information. *Id.* ¶¶ 114–15, 118. Any purportedly exculpatory content contained therein was only available to BCDA after August 5, 2022. *Id.* ¶ 167. This information was turned over to Plaintiff's criminal defense team prior to the matter going to trial, thus negating any purported prejudice caused thereby. Compl. ¶ 173.

Plaintiff's allegations that there were delays in the disclosure of this evidence are attributed to defendant Congdon's lack of experience or competence, not nefarious coordination with defendants Herzog or Demkovich, the City defendants, or anyone else. Plaintiff's conclusory allegation that all defendants "agreed" to "act in concert" are insufficient. *See Bertuglia*, 839 F. Supp. 2d at 728; *see also Ciambriello*, 292 F.3d at 325 ("vague and conclusory" allegations not sufficient to support § 1983 conspiracy claim).

To the extent Plaintiff alleges a conspiracy existed amongst County employees, "[t]he intracorporate conspiracy doctrine posits that the officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other." *Dunlop v. City of New York*, No. 06 Civ. 0433(RJS), 2008 WL 1970002, at *9 (S.D.N.Y. May 6, 2008) (quotations and citations omitted). Furthermore, "the doctrine bars conspiracy claims alleging concerted action by employees and/or the heads of various departments within a single municipal entity," which here includes the County as an entity

and BCDA, "where the complaint fails to allege that the various entities were effectively acting as separate entities in carrying out the alleged conspiracy." *See id*. (citations omitted). Thus, the intracorporate conspiracy doctrine applies when a complaint "clearly depict[s]" a conspiracy "as the product of a single corporation acting exclusively through its own directors, officers, and employees." *Id*. at *10 (quotations and citations omitted). Absent specific facts pled to suggest that the County had a meeting of the minds with another party to cause an unconstitutional injury, the County should be entitled to judgment. *See Gallop*, 642 F.3d at 369.

### VI. THE COUNTY SHOULD BE GRANTED JUDGMENT ON PLAINTIFF'S SIXTH CAUSE OF ACTION FOR UNCONSTITUTIONAL CUSTOM OR POLICY AND FAILURE TO SUPERVISE AND TRAIN

Plaintiff's sixth cause of action claims a 42 U.S.C. § 1983 *Monell* unconstitutional custom or policy and failure to supervise and train. As explained in section III, *supra.*, as with all of Plaintiff's 42 U.S.C. § 1983 causes of action, Plaintiff fails to articulate a County custom or policy sufficient to overcome the *Monell* standard. What Plaintiff's allegations truly attempt to make out is that he feels the investigation into Demkovich and Herceg's allegations against him should have been performed better, but there is no constitutional right to an adequate investigation. *See Newton v. City of New York*, 566 F. Supp. 2d 256, 278 (S.D.N.Y. 2008).

A § 1983 claim against a municipality "is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). A municipality's failure to train "must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact." *Id.* Therefore, "[a] pattern of similar  constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (quotations omitted). Where, however, a plaintiff premises his failure to train claim on a single incident and fails plead plausible, non-conclusory factual allegations that would establish that a municipal custom or policy resulted in the alleged constitutional violations,

the claim must be dismissed. *See Drawbridge v. Schenectady County Dept. of Social Services*, No. 23-1214, 2024 WL 1152524, at * 2 (2d Cir. March 18, 2024).

Additionally, *Monell* claims relying solely on hiring or delegation decisions are rejected by courts, unless a plaintiff can show a pattern of misconduct or that a policymaking official's decision evidenced conscious disregard for "an obvious risk that the [employee] would subsequently inflict a particular constitutional injury." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410–11 (1997). This has not been alleged against the County. Generally, a single incident, as alleged here, involving actors below the policy-making level is insufficient to show a municipal policy. *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).

Plaintiff attempts to assert that the County's assignment of ADA Alyssa Congdon to lead the prosecution of his case constitutes a *Monell* custom or policy. *See generally* Compl. at ¶¶ 109–31. This decision does not support the inference of an actionable municipal policy or custom. As stated in the Complaint, Defendant Congdon had been "practicing criminal defense for nearly a decade," Compl. at ¶ 105(f), which would reasonably suggest familiarity with foundational prosecutorial obligations.[1] A reasonable employer in the County's position could justifiably rely on her professional experience to ensure compliance with these requirements. The alleged failure to provide additional remedial instruction on these well-established legal obligations falls far short of establishing a policy so likely to result in constitutional violations as to demonstrate "deliberate indifference" on the part of the County. To the extent Defendant Congdon's lack of "prosecutorial," as opposed to "criminal defense" experience is alleged to demonstrate the County showing a "deliberate indifference" to the rights of criminal defendants, the Complaint also

---

[1]     The cases referred to here are *Brady v. Maryland*, 373 U.S. 83 (1963) (requiring the prosecution to turn over all exculpatory evidence to defendant in criminal case) and *Giglio v. United States*, 405 U.S. 150 (1972) (requiring prosecution to disclose any information that could be used to impeach credibility of prosecution witness).

correctly notes that Amanda Cronin, who "had served as a sex crimes prosecutor for a number of years … was also assigned to the instant case." Compl. ¶ 133.

Plaintiff's *Monell* theory against the County—whether based on failure to train or a single hiring or assignment decision—fails as a matter of law. The allegations do not plausibly support a finding of deliberate indifference, nor do they demonstrate the existence of any unconstitutional municipal policy or custom. Accordingly, the County should be granted judgment on Plaintiff's sixth cause of action.

## VII.    ALL PLAINTIFF'S STATE LAW CLAIMS ARE BARRED BY THE GOVERNMENT IMMUNITY DOCTRINE AND THE SPECIAL DUTY RULE

Plaintiff's state law claims fail as a matter of law because they arise from conduct that is discretionary in nature and thus protected by the doctrine of governmental immunity. *See Valdez v. City of New York*, 18 N.Y.3d 69, 76–77 (2011). Claims against government bodies are barred as a matter of public policy, precluding Plaintiff from asserting this claim. *See Wyllie v. District Atty. of County of Kings*, 2 A.D.3d 714, 720 (2d Dept. 2003).

Under New York law, public entities and their employees are immune from liability for discretionary actions taken in furtherance of official duties, particularly where those actions involve judgment, planning, or policy considerations. *Valdez*, 18 N.Y.3d at 76–77; *Lauer v. City of New York*, 95 N.Y.2d 95, 99–100 (2000). Discretionary decisions, such as whether to obtain a warrant for evidence, are precisely the type of conduct protected under the governmental immunity doctrine. *See Gabriel v. City of New York*, 89 A.D.3d 982, 983 (2d Dept. 2011).

The crux of Plaintiff's claims—that the County was negligent in assigning prosecutors, investigating the allegations, and managing its internal operations—implicates protected discretionary conduct. Even if the County's actions could somehow be characterized as ministerial rather than discretionary, Plaintiff still fails, or even attempts, to establish the existence of a "special duty," which is a threshold requirement for maintaining tort claims against a municipality for ministerial conduct.

*See Bryant v. Ciminelli*, 267 F. Supp. 3d 467, 479 (W.D.N.Y. 2017); *McLean v. City of New York*, 12 N.Y.3d 194, 199 (2009). The complaint does not plead, nor can it plausibly be read to allege, that the County owed Plaintiff any duty beyond the general duty owed to the public at large.

To satisfy the special duty exception, a plaintiff must show: (1) a statutory duty enacted for the benefit of a particular class; (2) a voluntary assumption of a duty through direct contact with the plaintiff who justifiably relied on it; or (3) the municipality's control over a known, dangerous condition. *Maldovan v. County of Erie*, 39 N.Y.3d 166, 171 (2022). Plaintiff has not attempted to allege any such duty, nor could he plausibly do so given the generalized nature of the conduct at issue and the lack of any direct, individualized interaction or reliance.

Thus, whether analyzed under the rubric of governmental immunity for discretionary acts or the absence of a special duty in ministerial contexts, all the County is entitled to judgment in its favor on all of Plaintiff's state law causes of action.

## VIII.  THE COUNTY SHOULD BE GRANTED JUDGMENT ON PLAINTIFF'S SEVENTH CAUSE OF ACTION FOR MALICIOUS PROSECUTION AND FALSE ARREST

Plaintiff's seventh cause of action asserts that the County (and other defendants) falsely arrested and maliciously prosecuted him. The County should be entitled to judgment in its favor on this claim, both because of the government immunity issue and because the Complaint does not raise sufficient allegations against the County for these claims.

### A.    Malicious Prosecution

To plead a claim for malicious prosecution under both New York law and federal law, "a plaintiff must show: (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice." *Kee v. City of New York*, 12 F.4th 150, 161–62 (2d Cir. 2021) (quotations omitted).

Plaintiff must overcome the principle that probable cause exists "when information is received from a putative victim or an eyewitness … unless the circumstances raise doubt as to the person's veracity." *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001). "[I]t is the plaintiff who bears the burden of proof in rebutting the presumption of probable cause that arises from the indictment," and that burden cannot be met by "mere conjecture and surmise that his indictment was procured as a result of conduct undertaken by the defendants in bad faith." *Savino v. City of N.Y.*, 331 F.3d 63, 73 (2d Cir. 2003) (quotations and citations omitted). This means that a grand jury's indictment creates a presumption of probable cause that can only be rebutted by a showing that the indictment was procured by "fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Id*. at 72 (quotations and citations omitted).

This analysis must take into consideration "the facts available to the [official] at the time of the arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997). In this case, Demkovich and Herceg reported to multiple law enforcement agencies that they were sexually assaulted by Plaintiff. Compl. at ¶¶ 74–76. They were interviewed by Binghamton Police officers, provided the police with text messages and photographs demonstrating they were with Plaintiff the night in question, and underwent forensic rape kits. (*Id.* at ¶¶ 74–81, 161(c)). There is no requirement "to explore and eliminate every plausible claim of innocence before making an arrest." *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006); *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) ("a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has [created] probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity.")

Further, prosecutors "enjoy wide discretion in presenting their case to the Grand Jury" and "are not obligated to search for evidence favorable to the defense or to present all evidence in their

possession that is favorable to the accused." *People v. Lancaster*, 69 N.Y.2d 20, 25–26 (1986); *see also Savino*, 331 F.3d at 75 (noting the district attorney "had the discretion and authority to decide what evidence to present to the grand jury," and "was under no duty to present every item of arguably exculpatory evidence in seeking an indictment.")

Plaintiff fails to adequately allege actual malice. Instead, Plaintiff makes "conclusory allegations or legal conclusions masquerading as factual conclusions." *Koulina v. City of New York*, 06-cv-11356 (SHS) 2009 WL 210727, at *5 (S.D.N.Y. Jan. 29, 2009). The only relevant factual allegation accuses all defendants of proceeding "with the prosecution and appeal out of malice; recklessness; willful blindness; and for ulterior motives including their own promotion, publicity, and appeasement of public pressure." Compl. ¶ 187. Affording Plaintiff every reasonable inference, the Complaint does not allege actual facts to support such a bold conclusion. In contradiction, it alleges that the County's conduct was a product of negligent hiring, training, and supervision—not malice or some nefarious political ploy. *See generally id.* ¶¶ 108–30.

Accordingly, the County is entitled to judgment on Plaintiff's malicious prosecution claim. The allegations fail to rebut the presumption of probable cause established by the indictment and do not plausibly allege conduct by the County that would support liability under state law.

### B.    False Arrest

"To state a claim for false arrest or false imprisonment under New York law, a plaintiff must show that: (1) the defendant intentionally confined the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise justified." *Guadagni v. N.Y.C. Trans. Auth.*, No. 08–CV–3163 (CPS) (SMG), 2009 WL 1910953, at *4 (E.D.N.Y. June 30, 2009) (*citing Savino*, 331 F.3d at 75). Probable cause "constitutes justification and is a complete defense to an action for false arrest."

*Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (noting that a § 1983 claim for false arrest is "substantially the same as a claim for false arrest under New York law") (quotations omitted).

Even if Plaintiff's false arrest claims were supported by sufficient factual detail, they are barred by the indictment returned by the grand jury, which "establishes the requisite probable cause to extinguish" any § 1983 and state law claims based on false arrest and malicious prosecution. *See Wright*, 2015 WL 5316410 at *11 (holding grand jury indictment "establishes the requisite probable cause to extinguish Plaintiffs' common law false arrest and malicious prosecution claims, as well as Plaintiffs' § 1983 claims based on false arrest and malicious prosecution"); *see also Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006) ("Under New York law, the existence of probable cause is an absolute defense to a false arrest claim.") A prosecutor "may rely on a complaint to establish probable cause and cannot be held liable for a constitutional violation simply because the complaint turns out to be false." *Loria v. Gorman*, 306 F.3d 1271, 1289 (2d Cir. 2002).[2]

Because he was indicted by a grand jury (*see* Compl. ¶ 157), Plaintiff can only overcome the presumption of probable cause by showing that the indictment was the product of fraud, perjury, the suppression of evidence by the police, or other police conduct undertaken in bad faith." *Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015) (quotations and citations omitted). Plaintiff does not allege any facts against the County to establish that the indictment was secured through bad faith or perjury in a manner that could rebut the "presumption of probable cause" arising from the indictment. *See id*.

Accordingly, Plaintiff's false arrest claim against the County must also be dismissed. The grand jury indictment establishes probable cause as a matter of law, and the Complaint alleges no

---

[2]    Of course, a "not guilty" verdict or dismissal of charges is not an affirmative finding that such allegations are untrue.

facts suggesting that the indictment was obtained through fraud, perjury, or other misconduct attributable to the County.

## IX.    THE COUNTY IS ENTITLED TO JUDGMENT ON PLAINTIFF'S EIGHTH CAUSE OF ACTION FOR ABUSE OF PROCESS

Plaintiff's eighth cause of action claims abuse of process against the County. A claim for abuse of process must be based on misuse of regularly issued legal process for a purpose not justified by the nature of the process itself. *Curiano v. Suozzi*, 63 N.Y.2d 113, 116 (1984); *New York State Properties, Inc. v. Clark*, 183 A.D.2d 1003, 1005 (3d Dept. 1992) ("some collateral advantage or corresponding detriment to [the plaintiff] which was outside the legitimate ends" of the process at issue). "It is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution" but that it "aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Savino*, 331 F.3d. at 77; *Pinter v. City of New York*, No. 09 Civ. 7841(SAS), 2013 WL 5597545 at * 15 (S.D.N.Y. Oct. 10, 2013). "A collateral objective is not merely an improper motive." *Simons v. New York*, 472 F. Supp. 2d 253, 265–66 (N.D.N.Y. 2007). Examples of collateral objectives are blackmail, extortion, and retribution. *Id.*; *see also Bd. of Educ. of Farmingdale Union Free School Dist. v. Farmingdale Classroom Teachers Ass'n*, 38 N.Y.2d 397, 404 (1975).

Plaintiff has failed to set forth sufficient plausible, non-conclusory allegations that, if proven, would establish any improper or malicious motive on the part of the County. The Complaint lacks any factual content describing who within the County allegedly pursued such a collateral objective, what steps were taken to accomplish it, or how those steps misused legal process. Plaintiff has pled no specific facts to support his conclusory assertion that the County "continued with the arrest and prosecution" of Plaintiff "[t]o bolster and support DA Korchack's re-election." Compl. at ¶ 261. This bare assertion, unsupported by any allegations describing a

causal link between prosecutorial actions and campaign activity, falls far short of plausibly suggesting the type of coercive misuse of legal process required to sustain an abuse of process claim. Plaintiff's failure to allege any acts by County policymakers or officials that reflect a deliberate effort to use the machinery of criminal prosecution for an ulterior or collateral purpose compels judgment in favor of the County on this claim.

## X.    THE COUNTY IS ENTITLED TO JUDGMENT ON PLAINTIFF'S NINTH CAUSE OF ACTION FOR INTENTIONAL, RECKLESS, OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Plaintiff's ninth cause of action—styled as intentional, reckless, or negligent infliction of emotional distress—fails as a matter of law.[3] New York courts narrowly construe such claims, which are disfavored and routinely dismissed where they merely repackage other tort allegations or arise from conduct incidental to lawful governmental action. In the present case, they are categorically barred by the statute of limitations and the County's immunity under well-established precedent. Plaintiff does not plead facts establishing the extreme and outrageous conduct necessary to support an intentional infliction claim or allege the type of physical endangerment required to support a negligent infliction claim. Additionally, to the extent these claims are grounded in the same conduct as Plaintiff's other state law causes of action, they are barred as duplicative.

### A.  Intentional Infliction of Emotional Distress

Under New York law, public policy bars claims sounding in intentional infliction of emotional distress ("IIED") against a governmental entity, like the County. *See Lauer v. City of New York*, 240 A.D. 543 (2d Dep't 1997) (citations omitted); *Melendez v. City of New York*, 171

---

[3]    There is no separate cause of action for reckless infliction of emotional distress when intentional infliction of emotional distress is pled. "[R]eckless conduct is encompassed within the tort of intentional infliction of emotional distress and does not constitute a separate and distinct cause of action." *James v. Flynn*, 132 A.D.3d 1214, 1216 (3d Dept. 2015).

A.D.3d 566, 566 (1st Dept 2019). This bar is above and beyond the protection offered through the general rule of governmental immunity. *See Haddock v. City of New York*, 75 N.Y.2d 478, 484 (1990). Plaintiffs' IIED claim against the County is categorically barred and must be dismissed.

Claims for IIED are also subject to a one-year statute of limitations under CPLR 215(3). *See Gallagher v. Directors Guild of Am.*, 144 A.D.2d 261 (1st Dep't 1988); *Ross v. Louise Wise Servs., Inc.*, 28 A.D.3d 272 (1st Dept. 2006). Plaintiff's complaint was filed on October 30, 2024. His criminal trial came to a conclusion on October 31, 2023 when he was acquitted by the jury. Compl. ¶ 185. Therefore, nearly every single action allegedly taken by the County related this matter took place outside the one-year limitations period. Plaintiffs' IIED claim is untimely.

The "highly disfavored cause of action" of intentional infliction of emotional distress ("IIED") is "almost never successful." *McGown v. City of New York*, No. 09-CV-8646, 2010 WL 3911458, at *5 (S.D.N.Y. Sept., 2010). Plaintiff's case is no exception. IIED "has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* (*quoting Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983)).

Plaintiff's IIED claim must be dismissed because he has not identified any conduct by the County that meets the extraordinarily high threshold of "extreme and outrageous" behavior required under New York law. At most, the allegations reflect Plaintiff's disagreement with how the criminal case was handled—conduct which, even if flawed, does not rise to the level necessary to sustain an IIED cause of action.

## B.  Negligent Infliction of Emotional Distress

"To plead a negligent infliction of emotional distress claim under New York law, a plaintiff must allege (1) a breach of a duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021). Under New York law, a claim for negligent infliction of emotional distress ("NIED") can proceed under one of two theories: (1) the "bystander" theory or (2) the "direct duty theory." *Werner v. Selene Fin., LLC*, No. 17-CV-06514, 2019 WL 1316465, at *11 (S.D.N.Y. March 22, 2019) (*citing Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996)). The bystander theory applies where "the defendant's negligence causes [plaintiff] to be threatened with serious physical harm and as a result [he] suffers emotion injury from witnessing the death or serious bodily injury of a member of [his] immediate family." *Id.* The direct duty theory applies when plaintiff "suffered an emotional injury from the defendant's breach of a duty which unreasonably endangered her own physical safety." *Id.*; *see also Lancellotti v. Howard,* 155 A.D.2d 588, 589 (2d Dept. 1989) ("The circumstances under which recovery may be had [on an NEID claim] for purely emotional harm are extremely limited and, thus, a cause of action seeking such recovery must generally be premised upon a breach of a duty owed directly to the plaintiff which either endangered the plaintiff's physical safety or caused the plaintiff fear for his or her own physical safety.")

Plaintiff's complaint does not allege that he saw a family member suffer a serious physical injury. Nor does he allege breach of duty that "unreasonably endangered" his physical safety. Plaintiff's NIED claim likewise fails, as the Complaint does not allege any breach of duty by the County that endangered Plaintiff's physical safety or caused him to fear for his own safety. Without

such allegations, the claim does not satisfy the narrow legal standard for negligent infliction of emotional distress under New York law and must be dismissed.

## XI.    THE COUNTY IS ENTITLED TO JUDGMENT ON PLAINTIFF'S TENTH CAUSE OF ACTION FOR NEGLIGENT HIRING, TRAINING, AND RETENTION

Plaintiff's tenth cause of action, alleging negligent hiring, training, and retention must be dismissed because it is both legally and factually deficient. New York law imposes a strict framework for pleading such claims, requiring a plaintiff to demonstrate not only that an employee committed a tort, but also that the employer was on notice of the employee's propensity to engage in such conduct and failed to act. Here, Plaintiff has not identified any factual basis to support such a claim against the County. Moreover, the allegations themselves undermine the claim by admitting that the employees acted within the scope of their employment, precluding liability under this theory as a matter of law. Finally, discretionary employment decisions by the County are shielded from liability by the doctrine of governmental immunity.

"To state a claim for negligent supervision or retention under New York law, in addition to the standard elements of negligence, a plaintiff must show: (1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (per curiam).

There are no facts sufficient to plausibly establish that the County was on prior notice of any specific acts of any employee. *See In re Roman Cath. Diocese of Rockville Ctr., New York*, 651 B.R. 146, 170 (Bankr. S.D.N.Y. 2023) (conclusory allegations are insufficient to satisfy the notice element). As explained in section VI., *supra*, Defendant was reasonable in relying on the

years of criminal law experience of its two lead prosecutors on Plaintiff's case. There are no allegations of similar prior misconduct by either in the Complaint.

In addition, "where an employee acts within the scope of his or her employment, the employer cannot be held liable for a claim of negligent hiring, retention, or training." *Barnville v. Mimosa Cafe*, No. 1:14–CV–518–GHW, 2014 WL 3582878, at *2 (S.D.N.Y. July 10, 2014) (*citing Talavera v. Arbit*, 18 A.D.3d 738 (2d Dept. 2005)). The Complaint affirmatively alleges that Defendants acted "within the scope of their employment," which is fatal to Plaintiff's claim. Compl. ¶ 278; *see De'Bey v. City of N.Y.*, No. 20 Civ. 1034 (PGG) (SLC), 2021 WL 8013765, at *16 (S.D.N.Y. Oct. 26, 2021), *adopted by*, No. 20 Civ. 1034 2022 (PGG) (SLC), WL 909790 (S.D.N.Y. March 29, 2022).

Lastly, the County's hiring, retention and supervision of its employees constitutes a discretionary act for which it cannot be held liable under the doctrine of government immunity. Indeed, the actions of a municipal entity, if discretionary, may never be a basis for liability in negligence. *See, e.g., McLean v. City of New York*, 12 N.Y.3d 194, 203 (2009); section VII., *supra*.

Accordingly, Plaintiff's negligent hiring, training, and retention claim must be dismissed. He fails to allege prior misconduct, any notice to the County, or facts plausibly suggesting a failure in supervision. In any event, the acts complained of were discretionary and undertaken within the scope of employment, making this a textbook case for dismissal under settled New York law.

## XII. THE COUNTY IS ENTITLED TO JUDGMENT IN ITS FAVOR ON PLAINTIFF'S ELEVENTH CAUSE OF ACTION UNDER ARTICLE I, §§ 6 AND 12 OF THE NEW YORK STATE CONSTITUTION

Plaintiff's eleventh cause of action, brought under the New York State Constitution, must be dismissed because it is duplicative of remedies already available under federal and state law. Courts routinely reject state constitutional claims where the plaintiff has alternative remedies, including claims brought under 42 U.S.C. § 1983 or traditional state tort law. Here, Plaintiff pleads

claims for false arrest and malicious prosecution under both federal and New York State law, foreclosing a separate claim under the New York Constitution.

"[D]istrict courts in this circuit have consistently held that there is no private right of action under the New York State Constitution where, as here, remedies are available under [§] 1983." *Talarico v. Port Auth. of N.Y. & N.J.*, 367 F. Supp. 3d 161, 171 (S.D.N.Y. 2019) (citation omitted) (collecting cases). Thus, "where a complaint alleges no theories of liability that are cognizable exclusively under the New York State Constitution, any claims brought under the state constitution are ordinarily dismissed." *Id.* at 171–72 (collecting cases). "A § 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." *Berie v. Stevenson*, No. 5:18-cv-00119 (BKS/TWD), 2019 WL 1017317 at *5 (N.D.N.Y. March 4, 2019); *see also Rodriguez v. City of New York*, 623 F. Supp. 3d 225, 260 (S.D.N.Y. 2022) (granting motion to dismiss state constitutional claim where the plaintiff "ha[d] an adequate alternative remedy at law" by virtue of a false imprisonment claim). Where, as here, the Plaintiff asserts causes of action under both § 1983 and in state law for false arrest and malicious prosecution, the County should be entitled to judgment on a claim founded under Article I, §§ 6 and 12 of the New York State Constitution. *See Yang Feng Zhao v. City of New York*, 656 F. Supp. 2d 375, 405 (S.D.N.Y. 2009) ("In this case the alleged conduct fits well within the traditional tort theories of false arrest, malicious prosecution, and assault and battery.")

Because Plaintiff plead claims under § 1983 and common law tort theories that cover the same alleged conduct, he cannot maintain a separate cause of action under Article I, §§ 6 and 12. As a matter of law, the existence of these adequate alternative remedies bars his state constitutional claim, and the County is therefore entitled to judgment as a matter of law on this cause of action.

## XIII.  THE COUNTY SHOULD BE GRANTED JUDGMENT ON PLAINTIFF'S TWELFTH CAUSE OF ACTION CLAIMING RESPONDEAT SUPERIOR

In the twelfth cause of action, Plaintiff alleges that the County is liable under the doctrine of respondeat superior for the actions of its employees. "Under New York law, an employer may be found liable for the conduct of its employee under theories of negligent hiring, retention, or supervision." *Doe v. City of New York*, No. 09 Civ. 9895(SAS), 2013 WL 796014, at *3 (S.D.N.Y. March 4, 2013). However, "[r]espondeat superior is not an independent cause of action, but a theory of liability that must attach to an underlying claim." *Spence v. City of N.Y.*, No. 1:20-cv-10090 (LTS), WL 4537946, at *3 (S.D.N.Y. Sept. 28, 2022 ); *see Baram v. Doe*, No. 23-cv-1758 (ER), 2024 WL 232319, at *10 (S.D.N.Y. January 22, 2024).

In this case, Plaintiff cannot succeed on a claim of respondeat superior against the County both because respondeat superior is not a claim, as such, and for the simple fact that Plaintiff has not established any underlying tort or violation of Plaintiff's rights committed by an individual County employee for which the County could be held liable. To the extent Plaintiff attempts to hold the County liable under New York law for negligent retention or supervision, that claim fails for the reasons set forth above. *See* section XI., *supra*.

## <u>CONCLUSION</u>

For the foregoing reasons, the County respectfully requests an order granting it judgment on all causes of action asserted against it.

DATED:  June 6, 2025     Respectfully submitted,

        **THE WLADIS LAW FIRM, P.C.**
        Christopher J. Baiamonte, Esq. (Bar Roll #702528)
        Timothy J. Lambrecht (Bar Roll #510390)
        *Attorneys for Defendant, The County of Broome*
        P.O. Box 245
        Syracuse, NY 13214
        Telephone:  (315) 445-1700
        E-mail:  cbaiamonte@wladislawfirm.com
            tlambrecht@wladislawfirm.com

TO:  All Counsel of Record via CM/ECF

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 6, 2025, I caused the foregoing document to be filed electronically with the Clerk of the District Court, Northern District of New York, using the CM/ECF system, which sent automatic and contemporaneous notification of such filing to all counsel who have made an appearance in this action.

s/Christopher J. Baiamonte

Christopher J. Baiamonte, Esq. (702528)
