**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JORDAN RINDGEN,

               Plaintiff,

                                         3:24-CV-1325 (AJB/ML)

       -v-

The COUNTY OF BROOME et al,

               Defendants.

**Hon. Anthony Brindisi, U.S. District Judge:**

**<u>DECISION and ORDER</u>**

## I.      INTRODUCTION

On October 30, 2024, Jordan Rindgen ("plaintiff") filed this 42 U.S.C. § 1983 action

against defendants Hailey Demkovich, Samantha Herceg, the City of Binghamton, Binghamton

Police Chief Joseph Zikuski ("Chief Zikuski"), Binghamton Police Captain Cory Minor

("Captain Minor"), Binghamton Police Investigator Amanda Miller ("Investigator Miller"), City

of Binghamton employees Jane/John Does #1-10, the County of Broome, the Broome County

District Attorney's Office, Broome County District Attorney Michael Korchak ("DA Korchak"),

Broome County Chief Assistant District Attorney Mark Loughran ("Chief ADA Loughran"),

Broome County Assistant District Attorneys Alyssa Congdon ("ADA Congdon") and Amanda

Cronin ("ADA Cronin"), Broome County District Attorney's Office Investigator Jeff Wagner,

Broome County employees Jane/John Does #1–10. Dkt. No. 1.

In short, plaintiff alleges that Hailey Demkovich and Samantha Herceg falsely accused

him of providing them with illicit drugs and sexually assaulting them, the Binghamton Police

Department ("BPD") inadequately investigated those false allegations, and the Broome County

District Attorney's Office (the "BCDA") deliberately disregarded exculpatory evidence, electing to prosecute him anyway. *See generally* Dkt. No. 1. Broome County Court Judge Carol A. Cocchiola dismissed the facilitation and drug-related charges against plaintiff prior to trial, and plaintiff was acquitted of the remaining charges by a jury. *Id.*

The twelve-count complaint asserts Section 1983 claims for False Arrest and Malicious Prosecution (Count I), Due Process and Denial of the Right to a Fair Trial (Count II), Failure to Intervene (Count III), Civil Conspiracy (Count IV), Supervisory Liability (Count V), *Monell* Liability for Unconstitutional Custom or Police and Failure to Supervise and Train (Count VI), as well as related state law claims for False Arrest and Malicious Prosecution (Count VII), Abuse of Process (Count VIII), Intentional, Reckless, or Negligent Infliction of Emotional Distress (Count IX), Negligent Hiring, Training, and Retention (Count X), violations of Article I, Sections 6 and 12 of the New York State Constitution (Count XI), and *respondeat superior* (Count XII). Dkt. No. 1, ¶¶ 195–280.[1]

Defendants Hailey Demkovich, Samantha Herceg, ADA Cronin, BCDA Investigator Jeff Wagner ("Wagner"), the BCDA, the Broome County employee Doe defendants, and the County of Broome (the "County") initially answered the complaint. Dkt. Nos. 44, 45, 50. Chief Zikuski, Captain Minor, Investigator Miller, the City of Binghamton (the "City"), the City employee Doe defendants, ADA Congdon, DA Korchak, and Chief ADA Loughran moved to dismiss all claims against them pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Dkt. Nos. 46, 54, 63. Then, ADA Cronin moved for a judgment on the pleadings pursuant to

---

[1] The complaint is sequentially numbered by line. Accordingly, citations to the pleading correspond with that document's internal pagination.

Rule 12(c).  Dkt. No. 69.  The Court granted defendants' motions in part, and denied them in part, in a decision and order dated September 29, 2025.  Dkt. No. 104.

While the other defendants' motions were pending, the County, the BCDA, and Wagner also moved to dismiss plaintiff's complaint pursuant to Rule 12(c).  Dkt. Nos. 92 & 96.  These later-filed motions were not yet fully briefed and, thus, not addressed, in the Court's earlier decision and order.

Now fully briefed, *see* Dkt. Nos. 103, 105–06, the Court addresses the remaining Rule 12(c) motions, filed by the County, the BCDA, and Wagner, on the basis of the submissions, without oral argument.

## II.    BACKGROUND

The Court incorporates the factual background from the earlier decision and order on defendants' motions to dismiss.  Dkt. No. 104 (the "September 29 Order") at 3–15.

## III.    LEGAL STANDARD

"After the pleadings are closed[,]but early enough not to delay trial[,] a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim."  *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (quoting *Lynch v. City of N.Y.*, 952 F.3d 67, 75 (2d Cir. 2020)).

"'To survive a Rule 12(c) motion, [the plaintiff's] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Lively*, 6 F.4th at 301 (quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

When assessing this facial plausibility requirement, a court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and draw all reasonable inferences in favor of the plaintiff, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). In doing so, a court generally confines itself to the facts alleged in the pleadings, documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

## IV.    DISCUSSION

Plaintiff asserts § 1983 claims for failure to intervene and municipal liability against the County, Compl. ¶¶ 211–16, 230–45, and a § 1983 civil rights conspiracy claim against the County, the BCDA, and Wagner, *id.* ¶¶ 217–21. Along with his § 1983 claims, plaintiff brings several related state law claims against the moving defendants, including:

(1) False Arrest against the County, the BCDA, and Wagner, *id.* ¶¶ 246–57;

(2) Malicious Prosecution against the County, the BCDA, and Wagner, *id.*;

(3) Abuse of Process against the County, *id.* ¶¶ 258–62;

(4) Intentional, Reckless, or Negligent Infliction of Emotional Distress against the County, the BCDA, and Wagner, *id.* ¶¶ 263–66;

(5) Negligent Hiring, Training, and Retention against the County, *id.* ¶¶ 267–72;

(6) Violations of Article I, Sections 6 and 12 of the New York State Constitution against the County, the BCDA, and Wagner, *id.* ¶¶ 273–76; and

(7) *respondeat superior* against the County, *id.* ¶¶ 277–80.

Defendants have moved to dismiss all claims asserted against them. Dkt. Nos. 92 ("County Mem."); 96 ("Wagner Mem."). They primarily argue that plaintiff has failed to plausibly allege his claims against them. County Mem. at 11–32; Wagner Mem. at 9–12, 14–22.

- 4 -

In addition, the County argues that the BCDA must be dismissed as a defendant, because it is not a suable entity. County Mem. at 10–11.

In opposition, plaintiff maintains that he has plausibly alleged his § 1983 and state law claims against defendants, and argues that his claims against the BCDA should not be dismissed. Dkt. No. 103 ("Pl.'s Opp.") at 11–39.

### A. The Broome County District Attorney's Office

Plaintiff has named the County and the BCDA as defendants in this action. *See* Compl. ¶ 19. He refers to them interchangeably, but the County argues that the BCDA is not a suable entity and must be dismissed. County Mem. at 10–11. Plaintiff maintains that his claims against the BCDA "should not be dismissed on this basis but rather analyzed as claims against the County." Pl.'s Opp. at 10.

"The capacity of the District Attorney's Office to be sued is determined by state law." *Harris v. Tioga Cnty.*, 663 F. Supp. 3d 212, 233 (N.D.N.Y. 2023) (citing Fed. R. Civ. P. 17 (b)), *appeal dismissed*, 2024 WL 4179651 (2d Cir. Sept. 13, 2024). "'Under New York law, departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued.'" *Id.* (quoting *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002)). "Courts have routinely applied this rule to conclude that 'the District Attorney's Office is not a suable entity.'" *Harris*, 663 F. Supp. at 233 (quoting *Woodward v. Office of Dist. Att'y*, 689 F. Supp. 2d 655, 658 (S.D.N.Y. 2010)).

Because the BCDA is not a suable entity, plaintiff's claims against the BCDA must be dismissed. Any factual allegations made against the BCDA will be treated as if made against the County.

### B. Section 1983 Claims

Of the remaining defendants, plaintiff has asserted failure to intervene and municipal liability claims against the County, and civil rights conspiracy claims against Wagner and the County. Compl. ¶¶ 211–21, 230–45. Both defendants seek dismissal of plaintiff's § 1983 claims against them. County Mem. at 11–20; Wagner Mem. at 9–14.

#### 1. Failure to Intervene

The County argues plaintiff's failure to intervene claim must be dismissed because plaintiff has failed to "allege or articulate how the County, as a municipal entity, was positioned to prevent or remedy" any constitutional violations "in real time." County Mem. at 14. In response, plaintiff has "withdraw[n] [his] failure to intervene claim against the County." Pl.'s Opp. at 39. Accordingly, plaintiff's failure to intervene claim against the County is dismissed.

#### 2. Municipal Liability under *Monell*

Plaintiff's "Sixth Cause of Action" is characterized as a "42 U.S.C. § 1983 *Monell* Claim for Unconstitutional Custom or Policy and Failure to Supervise and Train." Compl. ¶¶ 230–245. As an initial matter, "*Monell* does not provide a separate cause of action . . . it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006) (citing *Monell v. Dep't Social Servs.*, 436 U.S. 658, 694 (1978)) (emphasis in original).

Plaintiffs proceeding under a *Monell* theory must "'plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'" *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (quoting *Wray v. City of N.Y.*, 490 F.3d 189, 195 (2d Cir. 2007)).

The County argues, in part, that "the complaint lacks specific non-conclusory facts identifying" a policy or custom of the County (or the BCDA) that resulted in the deprivation of his rights under federal law. County Mem. at 13. Plaintiff disagrees. Pl.'s Opp. at 29–35.

A plaintiff can satisfy the governmental policy element by alleging, *inter alia*, that (1) "a municipal policy or ordinance is itself unconstitutional," *Amnesty Am.*, 361 F.3d at 125; (2) a municipality's persistent and widespread "practice, as opposed to its formal policy, is to engage in the constitutional violation at issue," *Green v. City of N.Y.*, 465 F.3d 65, 80 (2d Cir. 2006); (3) an official with final policymaking authority makes a "a deliberate choice to follow a course of action . . . from among various alternatives," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986); or (4) "the municipality is aware that its policy for handling a given situation, although not unconstitutional in itself, may be applied unconstitutionally, but nevertheless consciously chooses not to train its employees in proper application of the policy," *Green*, 465 F.3d at 80.

Here, plaintiff alleges that the County is subject to *Monell* liability due to (1) the unlawful acts of officials with policymaking authority, Compl. ¶ 231; (2) the County's failure to supervise and train its employees, *id.* ¶¶ 232, 236; and (3) the BCDA's custom or practice of erroneously instructing grand juries, *id.* ¶¶ 156(a), 231. The County argues that none of these allegations plausibly establish a policy or practice of the County that could support *Monell* liability. County Mem. at 13. Plaintiff alleges that the County should be held liable pursuant to *Monell* because the acts and decisions of its policymaking officials violated his rights. Compl. ¶ 231; Pl.'s Opp. 29–32.

"Where a plaintiff seeks to hold a municipality liable for a 'single decision by [a] municipal policymaker[ ],' . . . the plaintiff must show that the official had final policymaking power." *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (quoting *Pembaur*, 475 U.S. at

480). "Whether an official has final policymaking authority is a legal question, determined on the basis of state law." *Roe*, 542 F.3d at 37. "[T]he critical inquiry is not whether an official generally has final policymaking authority; rather, the court must specifically determine whether the government official is a final policymaker with respect to the particular conduct challenged in the lawsuit." *Id.*

The complaint states that DA Korchak was "the ultimate policymaker" and Chief ADA Loughran "was a policymaker." *See generally* Compl. Although these allegations are essentially bare legal conclusions, the Second Circuit has held that a district attorney acts as a final policymaker when the "district attorney acts as the manager of the district attorney's office." *Walker v. City of N.Y.*, 974 F.2d 293, 301 (2d Cir. 1992). Here, the complaint plausibly alleges facts from which it could be inferred that DA Korchak acted as "the manager" of the BCDA at various times. Compl. ¶¶ 11, 109, 131.

To impose *Monell* liability on a municipal entity based upon the decisions or acts of a final policymaker, a plaintiff must allege that those decisions or acts *caused* a constitutional deprivation. *See Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 363 (2d Cir. 2021). Put differently, a plaintiff must plausibly allege "either that the official who is a final policymaker in the area directly committed or commanded the violation of the plaintiff's federal rights . . . or that . . . he indirectly caused the misconduct of a subordinate municipal employee." *Jeffes v. Barnes,* 208 F.3d 49, 61 (2d Cir. 2000).

The Court already determined that plaintiff has not plausibly alleged that DA Korchak himself violated plaintiff's constitutional rights, September 29 Order at 33–35, but plaintiff maintains that he has plausibly alleged that DA Korchak's decision to hire ADA Congdon indirectly caused violations of his constitutional rights. Pl.'s Opp. at 29–32.

"The fact that inadequate scrutiny of an applicant's background would make a violation of rights more *likely* cannot alone give rise to an inference that a policymaker's failure to scrutinize the record of a particular applicant produced a specific constitutional violation." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410–11 (1997) (emphasis in original). Instead, "[a] plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id.* at 411.

Plaintiff alleges that the BCDA, including DA Korchak, knew that ADA Congdon had no prosecutorial experience, but hired her, and assigned her to his case less than one month later. Compl. ¶ 109(a). Plaintiff also contends that ADA Congdon was quickly promoted to Bureau Chief of the Special Victims Bureau, even though she "indicated to [the] BCDA[ ] that she believed she lacked sufficient prosecutorial experience for the role of Bureau Chief of the Special Victims Bureau." *Id.* ¶ 109(c). Further, plaintiff has alleged that, "[d]espite having been a member of the Bar of the State of New York from 2012, and despite having practiced criminal defense for nearly a decade [ADA] Congdon did not understand her legal obligations as a prosecutor." *Id.* ¶ 109 (f).

These allegations are insufficient. An official's failure to adequately scrutinize an applicant's background amounts to deliberate indifference "[o]nly where adequate scrutiny of [the] applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire . . . would be the deprivation of a third party's federally protected right." *Brown*, 520 U.S. at 411. Here, that is not the case.

Even taken as true, plaintiff's allegations could not plausibly support an inference that DA Korchak was deliberately indifferent in hiring and assigning ADA Congdon to plaintiff's

case. Plaintiff acknowledges that ADA Congdon had nearly ten years of experience as a criminal defense attorney. Compl. ¶ 109(f). The fact that she had never been a prosecutor and had expressed some reluctance about taking on a leadership role, without more, could not plausibly lead a policymaker "to conclude that the plainly obvious consequence of the decision to hire [ADA Congdon] . . . would be the deprivation of [plaintiff]'s federally protected right." *Brown*, 520 U.S. at 411.

Next, plaintiff alleges that the County is liable under *Monell*, because DA Korchak and Chief ADA Loughran failed to train their subordinates regarding their prosecutorial obligations, and this failure caused the alleged constitutional deprivations he suffered. Compl. ¶¶ 232, 236; Pl.'s Opp. at 32–34.

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by the municipality can the failure be properly thought of as an actionable city 'policy.'" *City of Canton, Ohio v. Harris*, 489 U.S. 378, 379 (1989). "Moreover, the identified deficiency in the training program must be closely related to the ultimate injury." *Id.*

Plaintiff alleges, in part, that ADA Congdon failed to recognize and disclose exculpatory evidence, in violation of his constitutional rights, because the BCDA had "constitutionally infirm policies and procedures that led to assistant district attorneys not knowing their obligations under *Brady*, *Giglio*, and discovery." Compl. ¶ 238.

This allegation cannot support a *Monell* claim, because plaintiff has failed to allege "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton*, 489 U.S. at 385. The Court previously determined that plaintiff

has not plausibly alleged a *Brady* violation, *see* September 29 Order at 58–59, accordingly, the County's allegedly insufficient training on *Brady* obligations cannot form the basis for *Monell* liability.

Plaintiff's allegation that the BCDA's policy of erroneously instructing the grand jury caused the prosecutor defendants to violate his rights, Compl. ¶¶ 155(a), 163, 231, fails for largely the same reasons. As the Court previously determined, plaintiff has only plausibly alleged that ADA Congdon violated his rights when she allegedly instructed Samantha Herceg to delete exculpatory electronic data during the investigation. September 29 Order at 41–52, 56–57. There is no direct causal link between this conduct and the policy alleged.

In sum, plaintiff has not plausibly alleged that an official policy or practice of the BCDA caused any alleged constitutional deprivation. Because plaintiff has not plausibly alleged that the County is liable under *Monell*, all of plaintiff's remaining § 1983 claims against the County must be dismissed. *See Vann v. City of N.Y.*, 72 F.3d 1040, 1049 (2d Cir. 1995) ("In order to establish the liability of a municipality in an action under § 1983 . . . a plaintiff must establish that the violation of his constitutional rights resulted from a municipal custom or policy.").

### 3. Civil Rights Conspiracy

Of the moving defendants, plaintiff's civil rights conspiracy claim remains only against Wagner. *See supra* Point IV.A–B.2. Wagner argues that plaintiff has failed to plausibly allege the elements of this claim against him. Wagner Mem. at 9–14. Plaintiff disagrees. Pl.'s Opp. at 11–16, 35–36.

"In order to survive a motion to dismiss on his § 1983 conspiracy claim, [plaintiff] must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."

*Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002) (quoting *Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir. 1999)).  The Second Circuit "has repeatedly held that complaints containing only 'conclusory,' 'vague,' or 'general allegations' of a conspiracy to deprive a person of constitutional rights will be dismissed."  *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977) (quoting *Black v. United States*, 534 F.2d 524 (2d Cir. 1976)).

Wagner argues, in part, that plaintiff has not plausibly alleged that he was personally involved in a conspiracy to violate plaintiff's constitutional rights.  Wagner Mem. at 10.  In opposition, plaintiff maintains that his allegations against Wagner are sufficiently "tied to the constitutional deprivations alleged."  Pl.'s Opp. at 11.

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Moffitt v. Town of Brookfield,* 950 F.2d 880, 886 (2d Cir. 1991).  "[I]n order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia,* the defendant's personal involvement in the alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).  To do so, a "plaintiff must directly plead and prove that 'each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Tangreti v. Bachmann*, 983 F.3d 609, 612 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).

As Wagner points out, Wagner Mem. at 11, "the complaint pleads exactly two factual allegations against [him]," namely, that ADA Congdon directed him to retrieve the Saitta Folder, and that he failed to do so.  Compl. ¶¶122–123(a).  The pleading does not allege that Wagner had any other involvement in plaintiff's investigation or prosecution, nor does it allege that he ever entered an agreement with any other defendant to violate plaintiff's rights.  *See generally id.*

Absent additional non-conclusory allegations that Wagner was aware of the contents of the Saitta folder and intentionally suppressed it or entered an agreement with other defendants to suppress it, plaintiff has not plausibly alleged that Wagner was personally involved in any constitutional violations.[2]  Further, because plaintiff's only alleged interaction was with ADA Congdon, another BCDA employee, any civil rights conspiracy claim based on this interaction is barred by the intra-corporate conspiracy doctrine.  *See Trombley v. O'Neill*, 929 F. Supp. 2d 81, 97 (N.D.N.Y. 2013) ("Where all alleged co-conspirators are employed by the same municipal entity, the intra-corporate conspiracy doctrine precludes a conspiracy claim.").  Accordingly, plaintiff's § 1983 conspiracy claim against Wagner is dismissed.

### C.  State Law Claims

Plaintiff identifies his state law cause of actions as: (1) malicious prosecution and false arrest; (2) abuse of process; (3) intentional, reckless, or negligent infliction of emotional distress; (4) negligent hiring, training, and retention; (5) violations of Sections 6 and 12 of Article I of the New York State Constitution; and (6) *respondeat superior*.  Compl. ¶¶ 246–80.  Wagner and the County argue that all of plaintiff's state law causes of action against them must be dismissed. Wagner Mem. at 14–23; County Mem. at 20–32.

As an initial matter, "[i]t is well-established . . . that *respondeat superior* 'is not a cause of action at all, but a theory of liability that must attach to a separate claim.'"  *Lederman v. Benepe*, 2016 WL 11588628, at *5 (S.D.N.Y. Mar. 11, 2016) (quoting *Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp. 2d 89, 110 n.6 (E.D.N.Y. 2011)).  Accordingly, the Court

---

[2] Of plaintiff's § 1983 claims, Wagner is only identified as a defendant to plaintiff's civil rights conspiracy cause of action.  Compl. ¶¶ 195–245.  However, plaintiff's opposition brief seemingly suggests that plaintiff also intended to assert his § 1983 false arrest and malicious prosecution claims against Wagner.  *See* Pl.'s Opp. at 16 ("Plaintiff plausibly pleaded his federal and state false arrest and malicious prosecution claims.").  To the extent those claims were also asserted against Wagner, they also fail for lack of personal involvement, and must be dismissed.

addresses *respondeat superior* liability in tandem with the underlying cause(s) of action for which it is asserted.

### 4.   False Arrest

Plaintiff asserts his "Seventh Cause of Action" for "malicious prosecution and false arrest" against both Wagner and the County.  Compl. ¶¶ 246–57.  Because false arrest and malicious prosecution are distinct causes of action under state law, the Court will address them separately, beginning with false arrest.  *See Broughton*, 335 N.E.2d at 313 ("Although [false imprisonment and malicious prosecution] are kindred actions, each protects a different personal interest and is composed of different elements.").

Wagner argues, in part, that plaintiff's state law false arrest claim is time-barred and must be dismissed.  Wagner Mem. at 14–15.  Plaintiff has not addressed this argument.  *See generally* Pl.'s Opp.

"Statutes of limitations establish the period of time within which a claimant must bring an action."  *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 105 (2013).  Under New York law, "causes of action to recover damages for intentional torts . . . are generally subject to a one-year period of limitations."  *Williams v. City of N.Y.*, 153 A.D.3d 1301, 1305 (2d Dep't 2017).  But, where "intentional tort causes of action [are] asserted against municipal defendants[,] [they] must be commenced within the one–year–and–90–day statute of limitations contained in General Municipal Law § 50–i."  *Id.*

The limitations period set forth in N.Y. Gen. Mun. Law § 50-i also applies to an action against an employee of a municipality where the municipality is deemed "the real party in interest," *i.e.*, where the employee's alleged conduct occurred within the scope of their employment, such that the municipality would be required to indemnify them.  *See Ruggiero v.*

*Phillips*, 292 A.D.2d 41, 44 (4th Dep't 2002); *Ripka v. Cnty. of Madison*, 162 A.D.3d 1371, 1373 (3d Dep't 2018); *Clark v. City of Ithaca*, 235 A.D.2d 746, 746 (3d Dep't 1997).

Because plaintiff alleges that the named County employee defendants were acting within the scope of their employment, Compl. ¶ 22, the limitations period set forth in N.Y. Gen. Mun. Law § 50-i applies.

"[A] statute of limitations begins to run when the cause of action accrues—that is, when the plaintiff can file suit and obtain relief." *Heimeshoff*, 571 U.S. at 105 (internal quotations omitted). Under New York Law, a claim for false arrest accrues and, thus, the statute of limitations begins to run "at the time of arraignment and release on bail." *Bomboy v. State*, 26 A.D.2d 974, 974 (3d Dep't 1966) (citing *Molyneaux v. Nassau Cnty.*, 22 A.D.2d 954, 954 (2d Dep't 1964), *aff'd*, 209 N.E.2d 286 (N.Y. 1965)).

Plaintiff alleges that he appeared in local court to be arrested and arraigned on February 22, 2022. Compl. ¶¶ 137–38. This action was filed over one year and ninety days later, on October 30, 2024. *See id.* Accordingly, plaintiff's state law false arrest claim is time-barred and must be dismissed as to all moving defendants.[3]

### 5. Malicious Prosecution

Plaintiff asserts a state law malicious prosecution claim against both Wagner and the County. Compl. ¶¶ 246–57. Defendants argue that plaintiff's state law malicious prosecution claim must be dismissed because plaintiff has not raised sufficient allegations to sustain this claim. Wagner Mem. at 15–18; County Mem. at 21. Plaintiff maintains that, at this stage, he has plausibly alleged his state malicious prosecution claims. Pl.'s Opp. at 17–27.

---

[3] Plaintiff's state law false arrest claim against the County also fails because it is necessarily premised on *respondeat superior* liability, and plaintiff's state law false arrest claims have been dismissed as to all Broome County employee defendants. *See also* September 29 Order at 68.

Under state law, "[t]he elements of an action for malicious prosecution are (1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice." *Colon v. City of N.Y.*, 455 N.E.2d 1248, 1250 (N.Y. 1983).

New York courts have held that the "initiation" element may be satisfied through allegations that a defendant filed a charging instrument, *Bonfante v. Golub Corp.*, 186 A.D.2d 343, 344 (3d Dep't 1992), falsified or withheld information, *id.*, or "played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Viza v. Town of Greece*, 94 A.D.2d 965, 965 (4th Dep't 1983).

As for Wagner, plaintiff has only alleged that ADA Congdon directed Wagner to retrieve the Saitta folder, but that he did not. Compl. ¶¶ 122–23(a). Without more, plaintiff has not plausibly alleged that Wagner "initiated" plaintiff's prosecution. Accordingly, plaintiff's malicious prosecution claim against Wagner is dismissed.

The County argues that it cannot be held vicariously liable for malicious prosecution, because plaintiff not plausibly alleged his claim against any County employee. County Mem. at 21–23.

However, the Court previously found that plaintiff plausibly alleged a state law malicious prosecution claim against ADA Congdon, September 29 Order at 69, and the complaint alleges that, at all relevant times, ADA Congdon was acting within the scope of her employment. Compl. ¶ 21. The Court also determined that ADA Congdon is not entitled to absolute immunity at this stage. September 29 Order at 25–28. Therefore, the County may potentially be held liable for ADA Congdon's alleged conduct under a *respondeat superior* theory. *See Broadwater v. Cnty. of Onondaga*, 2024 WL 1053351, at *7 (N.D.N.Y. Mar. 11, 2024) (holding county

vicariously liable for conduct of assistant district attorney where alleged conduct was within the scope of employment but fell outside the scope of prosecutorial immunity).

The County also argues that plaintiff's state law malicious prosecution claim is barred by "governmental function" immunity and/or the "special duty" rule.  County Mem. at 20–23.  In opposition, plaintiff emphasizes that "[a] special duty is not an element of a . . . malicious prosecution claim, but only negligence[-]based claims."  Pl.'s Opp. at 38.

Plaintiff is correct.  The special duty rule "relates to the fundamental obligation of a plaintiff pursuing a negligence cause of action to prove that the putative defendant owed a duty of care," *Valdez v. City of New York*, 960 N.E.2d 356, 361 (2011), and does not apply to intentional torts, like malicious prosecution.  *See Kirchner v. Cnty. of Niagara*, 107 A.D.3d 1620, 1623 (4th Dep't 2013) ("In a *negligence-based claim* against a municipality, a plaintiff must allege that a special duty existed between the municipality and the plaintiff.") (emphasis added).

Unlike the "special duty" rule, which concerns an element of a negligence claim against a municipality, "governmental function" immunity is a defense that "shield[s] public entities from liability for discretionary actions taken during the performance of governmental functions." *Valdez*, 960 N.E.2d at 361.

"In order to prevail on a governmental function immunity defense, a municipality must do much more than merely allege that its employee was engaged in activities involving the exercise of discretion."  *Valdez*, 960 N.E.2d at 364.  "[T]he availability of governmental function immunity also turns on whether the conduct giving rise to the claim is related to an exercise of that discretion."  *Id.* (internal quotation omitted); *see also Ferreira v. City of Binghamton*, 975 F.3d 255, 271 (2d Cir. 2020) (noting that "[t]he defense . . . precludes liability for a 'mere error of judgment' but . . . is not available unless . . . the action taken actually resulted from . . . 'the

exercise of reasoned judgment.'" (quoting *Valdez*, 960 N.E.2d at 364) (cleaned up)).  Crucially, "the immunity . . . does not extend to situations where the employee . . .  violates acceptable . . . practice[s]."  *Lubecki v. City of New York*, 304 A.D.2d 224, 233–34 (1st Dep't 2003), *lv. denied*, 810 N.E.2d 912 (N.Y. 2004).

 For example, in *Kirchner*, the Fourth Department held that governmental function immunity did not attach where a medical examiner allegedly fabricated findings and an assistant district attorney allegedly coached a witness to lie, because those actions were not related to their discretionary duties.  107 A.D.3d at 1625.  The court emphasized that the "alleged conduct plainly did not involve the exercise of 'reasoned judgment which could typically produce different acceptable results.'"  *Id.* (quoting *Tango v. Tulevech*, 459 N.E.2d 182, 186 (N.Y. 1983)).

 Here, ADA Congdon allegedly directed complainant, Samantha Herceg, to delete exculpatory electronic data during the pre-arrest investigation.  Compl. ¶ 71.  This alleged conduct falls well beyond her discretionary duties as a prosecutor, and does not merely reflect a reasoned-but-erroneous, exercise of judgment.  Accordingly, governmental immunity does not attach, and the County may be held vicariously liable for state law malicious prosecution under the doctrine of *respondeat superior*.

## 6. Abuse of Process

 Of the moving defendants, plaintiff's "Eighth Cause of Action" for abuse of process is asserted only against the County.  Compl. ¶¶ 258–62.  The County argues that this claim must be dismissed because "[p]laintiff has failed to set forth sufficient plausible, non-conclusory allegations that, if proven, would establish any improper or malicious motive on the part of the County."  County Mem. at 25.  In opposition, plaintiff maintains that he has "plausibly pleaded

that Korchak and Loughran abused their official authority by authorizing criminal charges to proceed . . . solely to mitigate the significant public pressure following the events that transpired on November 27, 2021, and to support DA Korchak's re-election chances."  Pl.'s Opp. at 36.

Under New York law, a claim for "[a]buse of process has three essential elements: (1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective." *Curiano v. Suozzi*, 469 N.E.2d 1324, 1326 (N.Y. 1984).  "The mere commencement of an action, even with malicious intent, does not give rise to a cause of action for abuse of process."  *Dixon v. City of Rochester*, 234 A.D.3d 1301, 1302 (4th Dep't 2025).

The Court already determined that plaintiff has not plausibly alleged an abuse of process claim against DA Korchak because he has not alleged that DA Korchak "actually committed any acts to distort the process" issued against plaintiff.  September 29 Order at 69–71.  The complaint does not appear assert an abuse of process claim against Chief ADA Loughran, but to the extent that it does, plaintiff has not set forth sufficient non-conclusory facts to plausibly indicate that Chief ADA Loughran personally misused the process against plaintiff to achieve any collateral objective.  *See generally* Compl.

Because plaintiff has not plausibly alleged his abuse of process claim against either DA Korchak or Chief ADA Loughran, his claim against the County must also be dismissed, as it is necessarily based on *respondeat superior* liability.

### 7. Intentional, Reckless, or Negligent Infliction of Emotional Distress

Plaintiff's "Ninth Cause of Action" is identified as a claim for "intentional, reckless, or negligent infliction of emotional distress" and is asserted against Wagner and the County. Compl.  ¶¶ 263–66.  Both argue that this claim is time-barred and not otherwise permissible

under New York law. County Mem. at 26–29; Wagner Mem. at 19–22. In response, plaintiff has withdrawn this claim against the County and Wagner.[4] Accordingly, plaintiff's ninth cause of action is dismissed.

### 8. Negligent Hiring, Training, and Retention

Plaintiff asserts a "Negligent Hiring, Training, and Retention" claim against the County. Compl. ¶¶ 267–272. The County argues that this claim must be dismissed as it is "both legally and factually deficient." County Mem. at 29. In response, plaintiff "withdraws his negligent hiring, training and retention claim against the County." Pl.'s Opp. at 39. Accordingly, plaintiff's tenth cause of action is dismissed.

### 9. New York State Constitutional Violations

Plaintiff's "Eleventh Cause of Action" asserts violations of his rights under Article I, Sections 6 and 12 of the New York State Constitution against Wagner and the County. Compl. ¶¶ 273–76. Both argue that this claim must be dismissed because plaintiff has adequate alternative remedies under state and federal law. County Mem. at 30–31; Wagner Mem. at 22. In opposition, plaintiff maintains that these claims should proceed because § 1983 does not provide an adequate alternative remedy. Pl.'s Opp. at 37–38.

The Court of Appeals has "recognized a private right of action to recover damages against the State for violations of the Equal Protection and Search and Seizure Clauses . . . [f]inding neither injunctive, declaratory, nor exclusionary relief adequate to protect against the invasion of personal liberty interests suffered by the claimants." *Martinez v. City of*

---

[4] Plaintiff maintains that the County may still be held vicariously liable for intentional, reckless, or negligent infliction of emotional distress based on the acts of County employees. Pl.'s Opp. at 39. However, the Court has already determined that plaintiff has not plausibly alleged this claim against any other County employees, September 29 Order at 71–76, thus, the County cannot be held liable for this claim under a *respondeat superior* theory.

*Schenectady*, 276 A.D.2d 993, 996 (3d Dep't 2000) (citing *Brown v. State*, 674 N.E.2d 1129,

1140–41 (N.Y. 1996)), *aff'd,* 761 N.E.2d 560 (N.Y. 2001).  "[H]owever, the Court of Appeals

made it clear that th[is] 'narrow remedy'. . .  was not 'boundless.'"  *Lyles v. State*, 2 A.D.3d 694,

695 (2d Dep't 2003) (quoting *Martinez v. City of Schenectady*, 761 N.E.2d 560, 563 (N.Y.

2001)), *aff'd,* 820 N.E.2d 860 (N.Y. 2004).

> In *Lyles*, the Appellate Division for the Second Department held that:
>
> > recognition of the claimant's State constitutional claims was neither necessary nor
> > appropriate to ensure the full realization of his rights, because the alleged wrongs
> > could have been redressed by an alternative remedy, namely, timely interposed
> > common-law tort claims for assault and battery, false imprisonment, and the
> > intentional and negligent injury to his property.

*Lyles*, 2 A.D.3d at 695.

Similarly, here, plaintiff alleges that his rights under the New York State Constitution

were violated when he was "wrongly arrested and maliciously prosecuted."  Compl. ¶ 276.

Thus, recognition of a state constitutional claim is not necessary, as he has timely interposed a

common-law tort claim for malicious prosecution, which permits a damages remedy.  *See*

Compl. ¶¶ 246–57.  Accordingly, plaintiff's eleventh cause of action for violations of the New

York State Constitution is dismissed as to both moving defendants.

## D.  Unidentified County Employee Doe Defendants

Plaintiff has asserted various claims against County employees Jane/John Does #1–10.

The County answered on behalf of the County employee Doe defendants, Dkt. No. 50, but has

not explicitly moved to dismiss plaintiff's claims against them.

Of course, courts may dismiss Doe defendants on the basis of the pleadings where a

plaintiff has failed to state a plausible claim against them.  *See, e.g.*, *Darby v. Greenman*, 14

F.4th 124, 130 (2d Cir. 2021) (affirming district court's dismissal of Doe defendants who had not

appeared in the action where claims against the appearing defendants and the Doe defendants

were based on the same legal theories); *Baker v. Spinner*, 2019 WL 3430918, at *6 n.6

(N.D.N.Y. July 30, 2019) (dismissing unidentified and unserved Doe defendants *sua sponte*

where defendants sought dismissal of entire complaint and their failure to appear on behalf of

Does was likely "an oversight") *aff'd*, 826 F. App'x 105 (2d Cir. 2020); *see also Hanks v. City of*

*Syracuse*, 2022 WL 4619877 (N.D.N.Y. Sept. 30, 2022), *aff'd*, 2023 WL 8889764 (2d Cir. Dec.

26, 2023).

As the Court previously found, plaintiff has only plausibly alleged that his rights were

violated when ADA Congdon directed one of the complainants to delete exculpatory electronic

data.  September 29 Order at 37–78.  Plaintiff has not alleged that any unidentified County

employees were involved in this conduct.  Compl. ¶ 66.  Instead, plaintiff alleges only that "the

BCDA[]," generally, failed to obtain or review certain evidence, failed to confront the

complainants with evidence that undermined their allegations, and lacked fundamental

knowledge as to certain investigative procedures regularly employed by prosecutors.  Compl.

¶¶ 65, 86–87, 110, 119, 122, 128, 138, 141, 144, 122, 128, 138, 141, 150, 162, 166.

Without more, plaintiff has not plausibly alleged any claim against any particular County

Doe defendant at this stage.  Accordingly, plaintiff's claims against the unidentified County

employee Doe defendants are dismissed without prejudice.

**E.  Leave to Amend**

As a final matter, the Court must address whether plaintiff should be given leave to

amend his complaint.  Apart from the final sentence of his 'Conclusion' paragraph, plaintiff

offers nothing in either opposition brief to support his request for leave to amend his complaint.

Pl.'s Opp. at 39–40.

Under the Local Rules of Practice, "[a] party moving to amend a pleading . . . must attach

an unsigned copy of the proposed amended pleading to its motion papers."  L.R. 15.1(a).  "[T]he

proposed amended pleading must be a complete pleading, which will supersede the pleading

sought to be amended in all respects." *Id.* A motion to amend "must set forth specifically the

proposed insertions and deletions of language and identify the amendments in the proposed

pleading." *Id.*

Plaintiff has failed to comply with this Local Rule. His failure to attach a proposed

amended pleading is particularly frustrating, "as it precludes the Court from 'examin[ing] the

exact amendment that it is being asked to permit[;] ... ensur[ing] that all of the allegations

asserted . . . are contained in a single document[;] ... [and] eliminat[ing] the confusing nature of

piecemeal amended pleadings.'" *Wynn v. Lee*, 2019 WL 13546213, at *1 (N.D.N.Y. May 1,

2019) (quoting *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 508 (N.D.N.Y. 2009)).

Plaintiff's non-compliance with the Local Rules of Practice is a sufficient basis on which

to deny his motion to amend. *Reynolds-Sitzer v. EISAI, Inc.*, 586 F. Supp. 3d 123 (N.D.N.Y.

2022) (denying motion for leave to amend where plaintiffs requested leave in a brief paragraph

of their opposition papers and failed to comply with the Local Rules); *Webb v. Mentor

Worldwide LLC*, 453 F. Supp. 3d 550 (N.D.N.Y. 2020) (denying plaintiff's motion for leave to

amend, in part, for noncompliance with the Local Rules); *Braxton v. Bell*, 2020 WL 13908846, at

*1 (N.D.N.Y. July 7, 2020) (denying "motion to amend for failure to comply with the Local

Rules for the Northern District of New York and Federal Rules of Civil Procedure").

While plaintiff is correct that "the usual practice is to grant leave to amend" when justice

so requires, Pl.'s Opp. at 40 (citing *Romani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990)), "a

court need not always allow a party to replead simply because it asked. In particular, denial of

leave to amend is proper where the request gives no clue as to how the complaint's defects

would be cured." *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022) (internal

quotation omitted); *Murphy Med. Assocs., LLC v. Yale Univ.*, 120 F.4th 1107, 1114 (2d Cir. 2024) ("We have previously held that where plaintiffs have similarly 'failed to make formal motions to amend or to offer proposed amended complaints,' there is 'no abuse of discretion in the district court's implicit denial of [the] plaintiffs' cursory requests for leave to amend.'" (quoting *In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 188 (2d Cir. 2011)); *Solomon v. Flipps Media, Inc.*, 136 F.4th 41 (2d Cir. 2025) (affirming district court's denial of plaintiff's request for leave to amend her complaint where "she waited until her opposition to the motion to dismiss to request leave, and she did so only in a single footnote on the final page of her brief.").

Plaintiff was given extra time, Dkt. Nos. 98 & 100, and pages, Dkt. No. 102, in which to respond to defendants' motions—which raise identical or substantially overlapping legal issues. Yet, plaintiff failed to offer any indication of what new or additional, non-conclusory factual allegations he would raise to cure the deficiencies in his complaint. *See generally* Pl.'s Opp. Accordingly, plaintiff's unelaborated request for leave to amend his complaint is denied.

## V.    CONCLUSION

Therefore, it is

ORDERED that

1.  BCDA Investigator Jeff Wagner, County employee Doe defendants #1–10, and the Broome County District Attorney's Office are dismissed as defendants; and

2.  Plaintiff's Third, Fourth, Sixth, Eighth, Ninth, Tenth and Eleventh Causes of Action, and plaintiff's state law false arrest claim are dismissed against the County.

3.  Plaintiff's surviving claim against the County is state law malicious prosecution under a theory of *respondeat superior*.

The Clerk of the Court is directed to:

    a.   Terminate the dismissed defendants from the docket report; and

    b.   Terminate moving defendants' pending motions (Dkt. Nos. 92, 96).

**IT IS SO ORDERED.**

Dated:  December 1, 2025
       Utica, New York.

Anthony J. Brindisi
U.S. District Judge